# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KEVIN M.,

      Plaintiff,

                                   **Case No. 1:20-cv-7668**

    v.                             **Magistrate Judge Norah McCann King**

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Kevin M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

# I.      PROCEDURAL HISTORY

On February 11, 2015, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since June 22, 2013. R. 134–35, 174–75, 254–64. The applications were denied initially and upon reconsideration. R. 176–81, 189–95. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 196–200. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on August 7, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 46–112. In a decision dated February 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 22, 2013, Plaintiff's alleged disability onset date, through the date of that decision. R. 23–38. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 20, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 9, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 9.[2] On October 13, 2020, the case was reassigned to the undersigned. ECF No. 10. The matter is now ripe for disposition.

# II.     LEGAL STANDARD

## A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

> **B.** **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 35 years old on his alleged disability onset date. R. 36. He met the insured status requirements of the Social Security Act through December 31, 2016. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 22, 2013, his alleged disability onset date, and the date of the decision. R. 25−26.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: deep vein thrombosis ("DVT"), chronic venous insufficiency, lumbar degenerative disc disease, status post left femur fracture, left humerus fracture, and pelvic fracture, with surgical correction and metal rods in the left leg and left arm, history of pulmonary embolism, and obesity. R. 26. The ALJ also found that Plaintiff's diagnosed GERD, diabetes mellitus, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder ("ADHD") were not severe impairments. R. 26−28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 28−30.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 31−36. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a sheet metal worker. R. 36.

At step five, the ALJ found that a significant number of jobs−*i.e*., approximately 25,000 jobs as an assembler; approximately 12,000 jobs as an inspector; approximately 180,000 jobs as an order clerk−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 36−37. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 22, 2013, his alleged disability onset date, through the date of the decision. R. 37.

Plaintiff disagrees with the ALJ's findings at step four and contends that the ALJ failed to fully develop the record; he asks that the decision be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 26. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 23.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On February 13, 2018, Keith P. Radbill, D.O., Plaintiff's treating physician, wrote: "Mr. [M.] is permanently disabled & cannot work in any capacity 2o to shattered Pelvis[.]" R. 623. On August 14, 2018, Dr. Radbill reported and opined as follows:

> I have been treating Kevin since March 13, 2017 for opiate dependence with [sic] occurred as a result of taking opioid pain medication for numerous injuries to his body that caused him to become physically and mentally dependent on opiate medication. Over the course of the past 1.5 years, I have gotten to know Kevin and

8

the severity of his injuries including fractures to his pelvis, left leg, and left arm. He has had multiple surgeries to repair these problems but he still suffers severely on a daily basis and I have been witness to this. He cannot walk without the aid of a cane. He sometimes is in such severe pain that walking just a few steps is quite difficult and painful and causes him great physical and emotional stress.

It is my opinion that Kevin [M.] has permanent injuries that will not heal to function normally with further treatment. He will continue to have limitations with regards to normal activities of daily living as well as strenuous activities for the rest of his life. He is permanently disabled and unable to work in any capacity. I state this within a reasonable degree of medical certainty.

R. 692.

## V.    DISCUSSION

### A.    Development of the Record

Plaintiff argues that the ALJ failed to fully and fairly develop the record. *Plaintiff's Brief*, ECF No. 21, pp. 12−17; *Plaintiff's Reply Brief*, ECF No. 26, pp. 3−4. Plaintiff specifically argues that the ALJ erred in failing to obtain Plaintiff's 2013 application for disability benefits, which he pursued without the assistance of counsel or "associated evidence," and in failing to "explain the agency's efforts in the decision." *Id.* Plaintiff's arguments are not well taken.

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). However, "[t]he burden lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (citations omitted); *see also Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) ("[T]he ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'") (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "The ALJ's only duty in this respect is to ensure that the claimant's complete medical

history is developed on the record before finding that the claimant is not disabled." *Money*, 91 F. App'x at 215 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "[W]here a claimant is represented by counsel before the ALJ, an ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)).

In the case presently before the Court, Plaintiff alleged for the first time at the administrative hearing on August 7, 2018, that he had filed a prior application in 2013. R. 65−66. The ALJ stated that her office would investigate "to see if there's anything to that." R. 66. At the end of that administrative hearing, the ALJ expressly stated that she would keep the record open for three weeks to incorporate any additional records. R. 110. The ALJ also advised that she would extend that deadline if Plaintiff needed more time to submit additional records. *Id*.

Investigation revealed that, although Plaintiff had applied for benefits in 1997, there was no record of a filing in 2013. R. 275. This update was apparently communicated to Plaintiff's counsel. R. 393 (reflecting agency note of report of contact dated October 30, 2018, as follows: "Called attorney again and left a message on voice mail to call our office. There is no prior folder. Both folder [sic] are incorporated Title II and Title XVI in the file. Also, there is pending Post evidence from Dr. Burrows that was not received yet"), 428 (agency note of report of contact dated January 3, 2019, as follows: "Left word with Lisa Hutchinson, she will forward the message to the correct attorney. The lead and myself did not find a prior filing"). In *Plaintiff's Brief*, ECF No. 21, p. 13, however, Plaintiff's counsel represents that she did not receivd the October 2018 message. Although counsel apparently received the January 2019 message, she complains that "this information was also never transmitted to counsel *in writing*[.]" *Id*.

(emphasis added); *see also* R. 429 (reflecting Plaintiff's letter brief directed to the Appeals Council and dated June 24, 2019: "Despite repeated requests for the 2013 prior application to be reopened and ordered, since 2013 records were needed from that file, the ALJ failed or refused to order same, claiming it did not exist").

In the February 2019 administrative decision, the ALJ adjudicated the period from June 22, 2013, Plaintiff's alleged disability onset date, through the date of the decision. R. 37−38. Addressing the issue of the development of the record and the 2013 application that Plaintiff contended that he filed, the ALJ explained as follows:

> The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)). Additionally, the claimant requested numerous extensions of time to develop the record, which were granted (Exhibits 21E, 22E, 23E, 24E, 26E). The undersigned procured additional evidence, which was proffered to the claimant by letter dated November 8, 2018 (Exhibit 29E).

> At the hearing and in briefs, counsel contended that there was a prior file from 2013 that should have been added to the claimant's current file (Exhibits 24E, 28E, 30E). A review of the claimant's records shows that no prior files exist from 2013. The claimant previously filed an application in 1997, but there is no evidence of any filings in 2013. Therefore, the record is complete.

R. 23. The ALJ went on to note that, "[a]lthough the claimant alleges disability since June 22, 2013, there is no further evidence until 2015." R. 33.

Plaintiff continues to assert that he filed an application for benefits in 2013 and complains that, even in the absence of an application in 2013, the ALJ did not satisfactorily explain the search for this application. *Plaintiff's Brief*, ECF No. 21, pp. 12−17; *Plaintiff's Reply Brief*, ECF No. 26, pp. 3−4. However, the above recitation persuades this Court that the ALJ's office in fact searched for a 2013 application but found no such application. R. 23, 275, 393, 429. The only suggestion that an application for benefits was filed in 2013 is the uncorroborated statement by Plaintiff's counsel, which was apparently based on an uncorroborated statement made by

11

Plaintiff for the first time at the administrative hearing. R. 65−66. Notably, Plaintiff's

applications at issue in the present case did not identify medical treatment from 2013 or 2014. R.

282−83 (identifying records, including hospital stays and emergency room visits, only from

2015), 306−08 (identifying records, including hospital stays and emergency room visits, only

from 2015 and 2016).

Plaintiff also complains that, "[h]ad counsel been notified in writing of the difficulty

locating the 2013 claims file, she could have sought reconstruction of the file, which is

specifically provided for in the Commissioner's internal procedures." *Plaintiff's Brief*, ECF No.

21, p. 16 (citing Program Operation Manual System ("POMS") DI 20502.030; Hearings Appeals

Law and Litigation Manual ("HALLEX") I-2-2-12 and HALLEX I-4-6-50). Plaintiff's argument

in this regard is not well taken. As the Acting Commissioner points out, *Defendant's Brief*

*Pursuant to Local Civil Rule 9.1*, ECF No. 23, p. 7, the ALJ cannot "reconstruct" a 2013 claims

file that does not exist. In any event, neither POMS nor HALLEX has the force of law and,

therefore, a violation of either will not serve as an independent basis for remand. *Moraes v.*

*Comm'r Soc. Sec.*, 645 F. App'x 182, 186 (3d Cir. 2016) ("[A]s an internal manual, HALLEX

does not have the force of law[.]") (citations omitted); *Chaluisan v. Comm'r Soc. Sec.*, 481 F.

App'x 788, 791 (3d Cir. 2012) ("Internal social security manuals lack the force of law and do not

bind the Social Security Administration.") (citations omitted); *Bordes v. Comm'r of Soc. Sec.*,

235 F. App'x 853, 859 (3d Cir. 2007) ("These POMS and HALLEX provisions do not aid [the

plaintiff], however, because they lack the force of law and create no judicially-enforceable

rights.") (citations omitted); *Burke v. Comm'r of Soc. Sec.*, No. CV 19-14148, 2020 WL

2989081, at *3 (D.N.J. June 4, 2020) ("[S]tatements in POMS do not have the force of law.");

*Ungemach v. Comm'r of Soc. Sec.*, No. 1:18-CV-04987, 2019 WL 3024858, at *4 (D.N.J. July

11, 2019) (stating that the Court "quickly rejects" Plaintiff's request for appeal based on a failure to follow HALLEX because it is "not [an] independent ground[] for reversal").

Plaintiff goes on to complain that "[t]here were clear indications before the ALJ of missing records," which highlight the ALJ's failure to properly investigate and develop the record. *Plaintiff's Brief*, ECF No. 21, pp. 14−15 (citing R. 98 (reflecting administrative hearing testimony from lay witness Stacy Smith who stated that Plaintiff's mental state has declined since 2013), 490 (containing medical record dated February 5, 2015, that states that Plaintiff "reports 4 years ago [*i.e.*, in 2011] he had re-occurrence of DVTs in his legs and started coumadin again"), 550−51 (containing a medical record dated February 4, 2016, from Ronald Bagner, M.D., which reflects, *inter alia*, that Plaintiff "states that he underwent abdominal surgery for adhesions in 2012. He has been hospitalized in 2013, 2014, and February 2015, for blood clots" and that "[t]he patient has been hospitalized for recurrent phlebitis in 2013, 2014, and February 2015")). However, as previously discussed, Plaintiff, who was represented by counsel in the administrative proceedings at issue in this case, bears the burden of developing the record in the first instance;[3] the ALJ need not search for all available relevant evidence. *See Money*, 91 F. App'x at 215; *Crocker*, 2017 WL 1181584, at *4. Notably, Plaintiff does not explain why his counsel could not have requested and obtained records dated prior to 2015, nor does Plaintiff explain how consideration of any such evidence would have changed the ALJ's analysis at any step in the sequential analysis or would otherwise require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409−10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking

---

[3] In this respect, Plaintiff's reliance on *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003), which involved a claimant proceeding without the assistance of counsel, is inapposite. *See Plaintiff's Brief*, ECF No. 21, pp. 15−16.

reversal normally must explain why the erroneous ruling caused harm."); *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

In short, based on this record, the Court is not persuaded that this matter requires remand on this basis.

### B.      Treating Physician, Keith P. Radbill, D.O.

Plaintiff challenges the ALJ's consideration of the opinion of his treating physician, Keith P. Radbill, D.O. *Plaintiff's Brief*, ECF No. 21, pp. 17–21; *Plaintiff's Reply Brief*, ECF No. 26, pp. 4–5. Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative

14

evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220

F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[4] "'[a] cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F.

App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see*

*also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at

times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the]

case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20

C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d

Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

inconsistent with the other evidence in the record."). "In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion."

---

[4] As previously noted, Plaintiff's claims were filed on February 11, 2015. For claims filed after
March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source
opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with*
20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no
longer "defer or give any specific evidentiary weight, including controlling weight, to any
medical opinion(s) or prior administrative medical finding(s), including those from [the
claimant's] medical sources").

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to certain additional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasional use of foot controls; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally stoop, balance, crouch, kneel or crawl; avoid concentrated exposure to extreme cold and extreme heat; no exposure to workplace hazards, such as

moving machinery or unprotected heights; use of a cane for ambulation; frequent overhead reach and frequent fingering and handling; and a sit/stand option.

R. 31. In making this finding, the ALJ, *inter alia*, assigned "little weight" to Dr. Radbill's

opinion, reasoning as follows:

> As for the opinion evidence, Jennifer Burrows, PA-C, submitted a statement in August 2018. She stated the claimant was permanently disabled secondary to his motor vehicle accident in 1997. He had chronic pain syndrome due to chronic hip and leg pain. He had multiple injuries and was unable to work (Exhibit 14F). She submitted a similar statement in September 2017 (Exhibit 23F).
>
> Keith Radbill, D.O., submitted a similar statement in February 2018. He stated that the claimant was permanently disabled due to chronic back pain and herniated discs in the lumbar spine. He also stated that he had a shattered pelvis and could not work in any capacity (Exhibit 15F). He submitted a separate statement in August 2018. He stated that he was treating the claimant since March 2017. He developed opiate dependence due to taking medications for injuries. He could not walk without a cane. He sometimes had difficulty walking just a few steps due to severe pain. Dr. Radbill opined that the claimant had permanent injuries that would not heal to function normally. He would continue to have limitations in regards to normal activities of daily living as well as strenuous activities for the rest of his life. He was permanently disabled and unable to work in any capacity (Exhibit 24F).
>
> Little weight is accorded to the opinions of Ms. Burrows and Dr. Radbill. Both providers opined on an issue reserved to the Commissioner in suggesting overall disability. Further, their statements are overly conclusory and did not offer any specific functional limitations for consideration. They simply stated that the claimant was permanently disabled based on pain alone, but they did not offer any objective medical findings in support thereof. These blanket statements of disability are outweighed by the treating record, which shows only routine follow up and medication refills.

R. 35.

Plaintiff challenges the ALJ's consideration of Dr. Radbill's opinions, arguing first that

"Dr. Radbill's opinion is not an issue reserved to the Commissioner." *Plaintiff's Brief*, ECF No.

21, p. 19. To the extent that Dr. Radbill stated that Plaintiff is permanently disabled and unable

to work, R. 623, 692, this Court disagrees. *See Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114,

118 (3d Cir. 2020) ("Whether or not Louis can perform occupational duties is a legal

17

determination reserved for the Commissioner.") (citing 20 C.F.R. § 404.1527(d)); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 497 (3d Cir. 2008) ("[T]he ALJ was not obligated to give significant weight to Dr. Kumar's opinion as to Zonak's ability to work because the opinion related to the ultimate issue of disability—an issue reserved exclusively to the Commissioner.").

Plaintiff points to the functional limitations articulated by Dr. Radbill, including Plaintiff's difficulty walking without the use of a cane and the severe pain sometimes experienced by Plaintiff when he takes just a few steps. *Plaintiff's Brief*, ECF No. 21, p. 19 (citing R. 692). However, the ALJ's RFC limits Plaintiff to sedentary work and contemplates the use of a cane. R. 31. Plaintiff does not explain why these restrictions do not adequately accommodate his difficulty walking without a cane and pain when walking, nor does he identify any additional or different limitations that flow from Dr. Radbill's opinions but which the RFC failed to accommodate. *See generally Plaintiff's Brief*, ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 26; *see also Shinseki*, 556 U.S. at 409–10.

Pointing to evidence that Plaintiff believes "provide[s] objective support for Dr. Radbill's findings," Plaintiff goes on to contend that the ALJ erred in discounting Dr. Radbill's opinions on the ground that Dr. Radbill failed to offer any supporting objective findings and because treatment records showed only routine follow up and medication refills. *Plaintiff's Brief*, ECF No. 21, pp. 19–21 (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 26, pp. 4–5. However, even if the ALJ erred in this regard, the Court is not persuaded that this issue requires remand. As discussed above, Plaintiff has not explained why the ALJ's RFC limitations to sedentary work and the use of a cane do not adequately accommodate Plaintiff's difficulty walking without a cane and pain when walking, nor has he identified any additional functional limitations in Dr. Radbill's opinions that the ALJ failed to accommodate. Accordingly, if there

was any error in this regard, the error was, at most, harmless. *See Shinseki*, 556 U.S. at 409−10 (2009).

In short, for all these reasons, the Court concludes that the ALJ's consideration of Dr. Radbill's opinion enjoys substantial support in the record.

### C.    Subjective Complaints

Plaintiff also challenges the ALJ's consideration of his subjective complaints. *Plaintiff's Brief*, ECF No. 21, pp. 21−27; *Plaintiff's Reply Brief*, ECF No. 26, pp. 5−8. Plaintiff's challenge is not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to

19

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. §§ 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms),

416.929(c)(3) (same). Finally, an "ALJ has wide discretion to weigh the claimant's subjective

complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them

where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134

(citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d

Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as

there is a sufficient basis for the ALJ's decision to discredit a witness.").[5]

      Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 32−33. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

---

[5]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. The ALJ detailed years of medical evidence and record testimony to support her findings, including, *inter alia*, there is no evidence dated prior to 2013; when Plaintiff was hospitalized in February 2015 for recurrent DVT and complaints of chest pain, he admitted that he had not taken his prescribed Coumadin for two months because of its cost and he admitted that he was still smoking; a February 2016 consultative examination by Ronald Bagner, M.D., revealed, *inter alia*, that although Plaintiff ambulated slowly with moderate difficulty and had moderate difficulty getting on and off the table, he did not use an assistive device and was not uncomfortable sitting during the interview, had full range of motion of the cervical spine and upper extremities with no motor or sensory deficits, had a grip strength of 5/5, had decreased lumbar range of motion with pain, but straight leg raising was negative, there was no atrophy or motor deficits of the lower extremities, there was decreased sensation in the left lower extremity, but normal range of motion of the lower extremities with no tenderness; primary care records in 2016 showed only routine medication refills for Coumadin; at a March 2017 follow up for DVTs, Plaintiff had no new complaints and minimal swelling bilaterally; a Doppler study on the right suggested complete thrombosis of the common femoral and superficial femoral veins with central recanalization of the popliteal vein with normal distal flow and, on the left, Plaintiff had partial recanalization centrally of the femoral vein and the popliteal vein with a thrombosed superficial femoral vein; physical examination revealed a BMI of 37.60, very minimal edema of the left leg and none on the right; although Plaintiff had multiple scratches on both lower extremities and evidence of chronic venous insufficiency with mild stasis dermatitis, his physical examination was otherwise unremarkable; diagnoses included chronic DVT and chronic venous insufficiency; he was found to be stable with good

collateralization, asymptomatic; primary care records in 2017 and 2018 showed only routine follow up and medication refills; Plaintiff complained of chronic pain and weight gain with a BMI of 39.33, and he exhibited decreased lumbar range of motion, arthritic changes, and 1 + and 2+ edema of the lower extremities; Plaintiff reported that changing from Percocet to Suboxone made a huge difference in his pain management. R. 31−35. The ALJ specifically considered the functional effects of Plaintiff's obesity on his ability to perform basic work activities and incorporated those effects in Plaintiff's RFC. As previously discussed, the ALJ assigned little weight to the opinions of Ms. Burrows and Dr. Radbill. The ALJ assigned partial weight to the opinions of the state agency reviewing physicians (who opined that Plaintiff could perform a limited range of light work), finding that Plaintiff was limited to sedentary work. The ALJ also went on to explain as follows:

> In sum, the above residual functional capacity assessment is supported by the available medical evidence since the alleged onset date. The claimant has a long history of treatment for chronic pain since his motor vehicle accident and surgeries, but his treatment since the alleged onset date has been routine. The claimant treats with medications and routine follow up alone. He has no injections, physical therapy, chiropractic care, or additional surgeries. He continues to allege chronic pain that limits his daily activities, but physical examinations show only some decreased range of motion and sensation. The claimant has recurrent DVT's, but no recent hospitalizations for the same. In considering his chronic pain, obesity, and DVT's, the undersigned has limited him to only sedentary work with additional postural, manipulative, and environmental limitations. It is also recognized that he uses a cane. He was also accommodated with a sit/stand option to account for his pain and discomfort. These limitations adequately accommodate the claimant's residual pain and other symptoms. Due to the conservative nature of the claimant's treatment, more restrictive limitations are not warranted. In finding the claimant's allegations to be only partially consistent with the available medical evidence of record, the undersigned finds that he retains the residual functional capacity for sedentary work outlined above.

R. 36. In the view of this Court, the evidence provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Nevertheless, Plaintiff challenges the ALJ's assessment of his subjective complaints, arguing that the ALJ acknowledged at step two that Plaintiff suffered from several severe impairments but discounted his complaints "without adequate consideration [that] his pain and other symptoms flowing from these conditions would interfere with his ability to sustain the range of work the ALJ concluded he could perform." *Plaintiff's Brief*, ECF No. 21, pp. 23−24. This Court disagrees. Plaintiff has not explained, with citation to record evidence, how a finding of a severe impairment at step two establishes that Plaintiff suffered from additional−and otherwise unidentified−limitations in his RFC. *See generally id*. Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Moreover, as detailed above, the ALJ specifically noted how evidence in the record undermined the severity of Plaintiff's allegations, including, *inter alia*, the facts that Plaintiff has undergone only routine follow up care, that physical examinations showed only some decreased range of motion and sensation, and that Plaintiff has not experienced recent hospitalization for his recurrent DVTs. R. 31−36.

Plaintiff also contends that the ALJ "emphasized a lack of records for the early part of the period at issue without properly inquiring into the reasons for the missing evidence." *Plaintiff's Brief*, ECF No. 21, pp. 24 −26. For the reasons discussed earlier in this Opinion and Order, Plaintiff's argument in this regard is not well taken.

Plaintiff further argues that the ALJ misstated the evidence when finding that the treating record reflected only routine follow up care and medication refills, pointing to evidence that he relied on when challenging the ALJ's assessment of Dr. Radbill's opinions. *Plaintiff's Brief*, ECF No. 21, pp. 24−25 (citing *id.* at 19−21). However, these citations do not persuade the Court that the ALJ mischaracterized the evidence or that remand on this basis is warranted. The cited evidence primarily reflects medical findings that relate to physical impairments or conditions expressly considered by the ALJ or to Plaintiff's subjective complaints, which the ALJ likewise considered. It is not apparent to the Court how this evidence undermines the ALJ's finding that Plaintiff's treatment was routine, nor does it undermine the ALJ's consideration of Plaintiff's subjective complaints. *See id.* at 19−21; *see also Shinseki*, 556 U.S. at 409−10; *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Padgett*, 2018 WL 1399307, at *2.

Plaintiff goes on to argue that "the treating and examining sources were of the opinion that Mr. M[.]'s subjective complaints were credible and his symptoms were indeed debilitating – even if their opinions were not as specific as desired by the ALJ." *Plaintiff's Brief*, ECF No. 21, p. 26. This argument is likewise unavailing. As a preliminary matter, Plaintiff does not identify these treating and examining sources and he cites to no evidence to support this assertion. *See id.* The Court will not hunt through the record to find evidence to support Plaintiff's position. *See United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently

instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). In any event, even assuming that Plaintiff intended to refer to Dr. Radbill and Ms. Burrows, the ALJ appropriately discounted those opinions for the reasons previously explained.[6]

Plaintiff also refers to a SSA field officer's notation, in an April 2015 disability report, that Plaintiff experienced an anxiety attack during an interview. *Plaintiff's Brief*, ECF No. 21, p. 26 (citing R. 277). However, the Court is not persuaded that this single reference undermines the ALJ's well-supported consideration of Plaintiff's subjective complaints, particularly in light of the ALJ's wide discretion to weigh such complaints. *See Miller*, 719 F. App'x at 134; *Izzo,* 186 F. App'x at 286; *Van Horn*, 717 F.2d at 873.

Plaintiff also asserts that his limited daily activities support his subjective complaints. *Plaintiff's Brief*, ECF No. 21, p. 27. However, the ALJ specifically considered this contention but discounted Plaintiff's complaints, reasoning as follows: "He continues to allege chronic pain that limits his daily activities, but physical examinations show only some decreased range of motion and sensation." R. 36. The Court finds no error with the ALJ's reasoning in this regard.

Finally, Plaintiff contends that the ALJ should consider that he "had a consistent work history reflecting favorably on his claim." *Plaintiff's Brief*, ECF No. 21, p. 27. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v.*

---

[6] Dr. Bagner, the consultative examiner, did not express any opinion as to the supportability of Plaintiff's subjective complaints. R. 550–53.

*Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. R. 31–36.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

**D.    Lay Witness Evidence**

Finally, Plaintiff contends that the ALJ erred when considering the third-party statements of Plaintiff's girlfriend. *Plaintiff's Brief*, ECF No. 21, pp. 27–31; *Plaintiff's Reply Brief*, ECF No. 26, pp. 8–9. The Court of Appeals for the Third Circuit expects an ALJ to address the testimony of third-party witnesses. *Burnett,* 220 F.3d at 122; *see also* SSR 16-3p (providing that an ALJ must consider "the entire case record, including . . . information provided by . . . other

persons").

In the case presently before the Court, the ALJ considered Plaintiff's girlfriend's

statements as follows:

> The claimant's girlfriend/fiance, Tracy Smith, submitted Function Reports on the claimant's behalf in May 2015 and June 2016. She indicated that she knew the claimant for 20 years and saw him every day. She stated that the claimant was in pain every day and could not do much for himself. His cat was a therapeutic pet. She reiterated many of the claimant's other statements. She stated that his days varied and some were worse than others. She indicated that he had no quality of life and she would like to see him get the help he needed (Exhibits 3E, 11E).

> The claimant testified that he had lived with Ms. Smith for 5 years. . . .

> Ms. Smith also testified on the claimant's behalf. She testified that she helped the claimant with dressing and bathing. She treated him like a 3-year-old child. She was home with him most of the time. He watched television. He moved around during the day and shuffled. He gained weight and had blood clots in his legs. He could not do much of anything. She testified that she was disabled due to rheumatoid arthritis, but it was managed and she was able to care for him.

R. 32.

> Partial weight is also given to the statements provided by Ms. Smith. Ms. Smith has personal knowledge of the claimant and his daily activities due to her relationship with him and living with him. She provided her personal observations of the claimant's and his daily functioning. More weight is not given, however, as she is not an acceptable medical source. She did not provide specific functional limitations for consideration. Further, her statements are not impartial. Nonetheless, due to her personal relationship and knowledge of the claimant's functioning, her statements have been considered herein.

R. 35–36.

Plaintiff contends that the ALJ improperly discounted his girlfriend's statements,

resulting in reversible error. *Plaintiff's Brief*, ECF No. 21, pp. 27–31; *Plaintiff's Reply Brief*,

ECF No. 26, pp. 8–9. This Court disagrees. As a preliminary matter, under SSR 06-03p, which

was in effect at the time of Plaintiff's claim and was applicable to claims filed before March 27,

2017, an ALJ may consider factors such as "the nature and extent of the relationship" when

27

evaluating evidence from "other nonmedical sources," such as spouses and friends.

Moreover, even if the ALJ erred in her evaluation of Ms. Smith's statements and testimony, any such error was harmless. *See Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) ("An error is 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover.") (citation omitted). Plaintiff asserts that Ms. Smith did provide specific functional limitations when detailing Plaintiff's inability to perform certain daily activities, including an inability to perform house or yard work due to an inability to perform the requisite standing, sitting, stooping, or pending; use of a cane, crutches, or wheelchair; an ability to cook only by putting a meal in a microwave oven; an inability to bathe himself; and an inability to dress himself without help. *Plaintiff's Brief*, ECF No. 21, pp. 28 – 29 (citing R. 96–97, 341, 344). However, as previously discussed, the ALJ noted that, despite Plaintiff's purported inability to perform certain daily activities, physical examinations showed "only some decreased range of motion and sensation." R. 36. Moreover, Plaintiff has not explained why the RFC's limitations to sedentary work–with additional postural, manipulative, and environmental limitations, with the use of a cane and a sit/stand option–do not adequately accommodate Plaintiff's residual pain and other symptoms. *See Plaintiff's Brief*, ECF No. 21, pp. 27–31; *Plaintiff's Reply Brief*, ECF No. 26, pp. 8–9; *see also Shinseki*, 556 U.S. at 409–10. In short, and based on this record, any alleged error in evaluating Ms. Smith's statements and testimony is harmless and does not require remand. *See Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at 553.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

Date:  March 22, 2022              *s/Norah McCann King*

                                  NORAH McCANN KING
                                  UNITED STATES MAGISTRATE JUDGE